UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  Case No. 8:06-cr-325-T-23MAP
   8:09-cv-104-T-23MAP

DAVID EUGENE LEE
_____/

# **O R D E R**

Lee's motion to vacate under 28 U.S.C. § 2255 (CV Doc. 1)[1] challenges the validity of his conviction for possessing with the intent to distribute fifty grams or more of crack cocaine, for which offense Lee serves life imprisonment. Lee both challenges the validity of his guilty plea and argues that his trial counsel rendered ineffective assistance by misadvising Lee about a statute of limitation defense. The motion to vacate lacks merit.

## **FACTS**[2]

On April 14, 2000, a confidential informant arranged to purchase 125 grams of cocaine from David Eugene Lee. The two agreed to consummate that transaction in the parking lot of the Bay Area Outlet Mall in Pinellas County. When Lee arrived in the parking lot, the confidential informant entered his vehicle, observed the cocaine

---

[1] Citation to this civil case is designated as "CV Doc. __" and citation to Lee's underlying criminal case is designated as "CR Doc. __."

[2] This summary of the facts derives from Lee's plea agreement (CR Doc. 15, p. 14) and the record in the criminal case (Case No. 8:06-cr-325-T-23MAP).

and informed Lee that he would retrieve his money from his nearby vehicle. When the confidential informant opened his trunk under the guise of retrieving the money, law enforcement agents arrested Lee, who was at the time sitting in his vehicle with 123.9 grams of cocaine base and $4,000.00 which was contained in a McDonald's bag. In addition, Lee had $767.00 in his wallet at the time of his arrest.

Post-arrest, Lee admitted that the cocaine seized from his vehicle was his and acknowledged that the money seized was drug proceeds.

On August 9, 2006, a federal grand jury returned an indictment charging Lee with possession with intent to distribute fifty grams or more of cocaine base. Lee initially appeared before the magistrate judge on January 10, 2007, to enter his guilty plea. During the plea colloquy Lee asked the court for additional time to consult with counsel. The change of plea hearing resumed two days later on January 12, 2007, and Lee pleaded guilty pursuant to a written plea agreement.

## **GROUND FOR RELIEF**

Lee in his supporting memorandum presents the following as his sole ground for relief:

> Whether in violation of the Sixth Amendment to the United States Constitution counsel rendered ineffective assistance . . . under *Strickland v. Washington* . . . where [Lee]'s waiver of the statute of limitation defense and plea agreement was not knowingly and voluntar[il]y entered where counsel misadvised and misinformed [Lee] that he had a right to require that the Government prove the statute of limitation had not expired.

(Doc. 2, p. 11) Lee argues that his "purported waiver of the statute of limitations was not knowing and voluntary because he was never informed that he had a right to a statue of limitations defense or that it was the government's burden to prove that he was intentionally fleeing from justice." (CV Doc. 2, p. 13) Lee further argues that counsel failed to inform him "that he had a right to request that the jury find that he intentionally secreted himself from prosecution" (a finding necessary for application of the fugitive exception to the statute of limitation), and that, due to counsel's

failure, he did not have "a complete understanding of the law as it related to his case or the corresponding rights which he was giving up." (CV Doc. 2, p. 17) Absent the misadvice, Lee claims that he would have foregone his guilty plea and proceeded to trial.

## **APPEAL WAIVER**

Lee challenges counsel's pre-plea performance. Arguably, Lee cannot obtain relief on this ground because his guilty plea waived a claim of ineffective assistance of counsel based on a pre-plea event.

> In his habeas petition, Hutchins alleges that his trial counsel was ineffective for failing to explicitly define and advise him of a statute of limitations defense prior to advising him to waive that defense and plead guilty. Hutchins's voluntary guilty plea, however, waived any ineffective assistance of counsel claim.

*Hutchens v. Sec'y, Dep't of Corr.*, 273 Fed. App'x 777, 778 (11th Cir.), *cert. denied*, 555 U.S. 857 (2008). Similarly, the appeal waiver in Lee's plea agreement bars his claim.³ *Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005). Lee averred at the change of plea hearing that he understood the consequences of the appeal

---

³ The appeal waiver in Lee's plea agreement states in relevant part:

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence or to challenge it collaterally on any ground, including the ground that the Court erred in determining the applicable sentencing guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution . . . .

(CR Doc. 15, pp. 11-12) (emphasis in original)

waiver (CR Doc. 46, p. 15) and he does not argue that any exception specified in the appeal waiver applies to permit collateral review of his ineffective assistance ground.

Notwithstanding, even if not waived, Lee's ineffective assistance ground lacks merit.[4]

## **MERITS**

### A.   INEFFECTIVE ASSISTANCE OF COUNSEL

"[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

---

[4] Lee presented on direct appeal his ground of ineffective assistance of counsel. The Eleventh Circuit declined to address the merits of the ground "because there is insufficient evidence in the record concerning whether Lee's trial counsel misadvised him regarding his statute of limitations defense and failed to evaluate the limited waiver of appeal as it related to the facts of his case . . . ." (CR Doc. 55, p. 5)

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Lee must demonstrate that counsel's error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691-92. To meet this burden, Lee must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690-91. Lee cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . .[T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

An indictment filed on August 9, 2006, charged Lee with illegal conduct occurring "on or about April 14, 2000." (CR Doc. 1, p. 1) A five-year statute of limitation applies to the charged offense. 18 U.S.C. § 3282(a).[5] An exception to the

---

[5] 18 U.S.C. § 3282(a) provides:

Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or
(continued...)

limitation exists for a fugitive from justice. 18 U.S.C. § 3290.[6] To invoke the exception, the government bears the burden of proving, by a preponderance of the evidence, that a defendant concealed himself with the intent to avoid arrest or prosecution. *See United States .v Florez*, 447 F.3d 145, 149 (2d Cir. 2006) ("To toll a statute of limitations, it is the government's burden to show that a defendant was 'fleeing from justice.'") (citation omitted). *See also United States v. Fonseca-Machado*, 53 F.3d 1242, 1244 (11th Cir. 1995) ("Mere absence from the jurisdiction in which a crime occurred does not render the suspect a fugitive from justice; he must be found to have absented himself from the jurisdiction with the intent to avoid prosecution."). *See also Streep v. United States*, 160 U.S. 128, 133 (1895) ("[I]t is quite clear that any person who takes himself out of the jurisdiction, with the intention of avoiding being brought to justice for a particular offense, can have no benefit of the limitation . . . .").

In Lee's case, the government invoked the fugitive exception to toll the five-year limitation. During the plea colloquy the prosecutor recited the factual basis for applying the fugitive exception. Counsel advised the court of her discussion with

---

[5](...continued)
punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

[6] 18 U.S.C. §3290 provides:

No statute of limitations shall extend to any person fleeing from justice.

- 7 -

Lee about the statute of limitation defense and the magistrate judge specifically asked Lee whether he chose to waive that defense:

> Court:       [Counsel], are you satisfied the defendant is entering his plea of guilty here knowingly and voluntarily, with a full understanding of the consequences?
>
> [Counsel]:   Yes, Your Honor.
>
> Court:       [Prosecutor], do you have any suggested questions I should ask??
>
> [Prosecutor]: Judge, no suggested questions.  I would ask that I be permitted to put additional facts on the record in view of the fact that the indictment was returned more than five years after the offense.  I think what it will do is - - potentially problems down the road could be dealt with today.
>
> And these facts would be, Judge, that some time after the defendant's arrest on April 14, 200[0], the defendant was released on bond by the state court in Pinellas County on the condition that he appear for all future state court proceedings.
>
> The defendant, in fact, failed to appear in court after being released and the state court issued a warrant for his arrest for failure to appear.  The defendant was arrested on May 26th of last year, 2006, on the failure to appear warrant.[7]
>
> At the time of his arrest - - and this arrest took place in Hillsborough County, Florida.  At the time of his arrest, the defendant was searched and his wallet was taken.  In his wallet law enforcement found a

---

[7] The presentence investigation report includes information showing that Lee concealed himself with the intent to avoid arrest or prosecution rendering him a fugitive from justice:

> Mr. Lee told the Probation Office that he has lived in the Tampa area since he was 6 months old.  At the time of the defendant's arrest he did not have a permanent residence.  Mr. Lee explained that [since 2006] he has been living between his mother's home, his girlfriend's apartment, and on the road.  The defendant noted that his living arrangements resulted from his job as a truck driver and his desire to avoid arrest.  At the time of the defendant's arrest he was using the name Antonio Kelly.  The defendant noted that this is his brother-in-law's name.

(Presentence Investigation Report, Case No. 8:06-cr-325-T-23MAP, ¶57, p. 11) Lee offered no objection to this paragraph of the report.

- 8 -

|  |  |
|---|---|
|  | Florida driver's license with the defendant's picture on it. That driver's license had the name Antonio Kelly, which obviously is not the defendant's name. |
|  | The defendant was also in possession at that time of a Social Security card in the name of Antonio Kelly. |
|  | Those would be the additional facts, Judge. And I would also ask if you inquire of the defendant whether that is true. Thank you. |
| Court: | Let me ask before I do that . . . is it the government's intention in this case that the statute of limitations period tolled because the defendant was a fugitive? |
| [Prosecutor]: | Yes, Judge. |
| Court: | Is there a requirement that the defendant know that he be a fugitive from federal prosecution as opposed to state prosecution? |
| [Prosecutor]: | No, there is not under the case law. |
| [Counsel]: | I'm going to tell you, Your Honor, that I thoroughly reviewed that issue and it was my intention to file a motion to dismiss based on [a] violation of the statute of limitations. I could find no law that excuses Mr. Lee from that fugitive exemption, and so therefore I didn't file the motion.[8] But I thoroughly researched it and I advised Mr. Lee of everything I had done in those efforts.[9] |

---

[8] Lee argues that this particular statement "demonstrates that defense counsel mistakenly believed that it was [Lee] who bore the burden of proof on the issue." (CV Doc. 2, p. 14) Contrary to Lee's mischaracterization, the statement, in context, is counsel's assessment of Lee's qualification for the fugitive exception. The statement does not address the burden of proof as Lee suggests.

[9] The government attached to its response an affidavit from Lee's trial counsel in which she avers that she discussed with Lee both his fugitive status and the viability of a statute of limitation defense:

> 6. Based on my conversations with Mr. Lee, I was aware that he had willfully failed to appear at his sentencing hearing in Circuit Court in Pinellas County, Florida, because, according to Mr. Lee, although his attorney had promised him that he would receive probation, on the date of sentencing, [Lee] discovered that he would instead receive a minimum mandatory term of incarceration of three (3) years.
>
> 7. Mr. Lee advised me that, upon learning of the sentence he would receive, he

(continued...)

- 9 -

> Court: Let me - - let me ask, [counsel], is the defendant aware that by pleading guilty he will be waiving that issue, that is the statute of limitations issue?
>
> [Counsel]: I don't know if he understands that in particular, but I did - - I have a folder here full of the cases that I've pulled on that. I have discussed my research because I did tell Mr. Lee as soon as I looked at the indictment there might be a statute of limitations problem.
>
> And I visited Mr. Lee in [the] Hernando County Jail, I guess, the week before last, and we had a thorough discussion about that. He understands that there was not a good faith basis for me to file that motion.
>
> Court: Mr. Lee, do you understand that by your pleading guilty this morning that you are waiving your statute of limitations defense? Statute of limitations, as [counsel] no doubt explained to you, is the time period for which the government, the prosecutor, charging - - the sovereign, in this case the United States, can bring criminal charges against someone.

---

[9](...continued)
  absconded from the courthouse during a recess in the sentencing procedure and remained at large.

8. Mr. Lee advised me further that, because he had custody of his minor children, he was unwilling to go to Florida State Prison.

9. I advised Mr. Lee that, because the government had sufficient evidence to establish that he had been a fugitive from justice and because he would be unable to rebut that proof, there was not a good faith basis for filing a motion to dismiss based on the expiration of the statue of limitations.

. . . .

14. Mr. Lee was noticeably hesitant during the [January 10, 2007,] plea colloquy. Because Mr. Lee did not want to continue with the change of plea at that time, the hearing was terminated.

15. I visited Mr. Lee at the Orient Road Jail to again discuss his options. At that time, all of the same issues were raised and discussed and Mr. Lee again decided to go forward with the plea. At no time did I coerce Mr. Lee to pursue any particular course of action.

(CV Doc. 7, pp. 2-3)

>    There are exceptions to the statute of limitations, and you've discussed that, apparently, or your lawyer has discussed that with you.  And [the prosecutor] has just addressed that this morning and that is someone who has been a fugitive from prosecution.
>
>    But I want you to understand that by pleading guilty you are waiving or giving up such a defense.  So if things don't go the way you hoped they would at sentencing and you're back at the institution, you're not going to be able to challenge this claim, that the statute of limitations prohibits the government from prosecuting you.  I want you to understand that.

[Lee]:    (Nods head).  Yes, sir.

Court:    Okay.  And do you agree with the facts that - - or at least the statement that [ the prosecutor] has said as to what the government could prove about your arrest and your flight after being prosecuted in the state court?[10]

[Lee]:    Yes.  In state court, yes.

(CR Doc. 46, pp. 18-22)

The record belies Lee's contention that he "was never informed that he had a right to a statute of limitations defense." (CV Doc. 2, p. 13)  The record also shows that Lee's flight from state prosecution and his use of false identification (facts that during the plea colloquy Lee admitted were true) supports application of the fugitive exception.  Lee's fugitive status tolled the five-year statute of limitation.  Counsel advised Lee of the government's evidence to support tolling and correctly advised Lee that he qualified as a fugitive, precluding a statute of limitation defense.  Lee fails

---

[10] Lee in his memorandum asserts that the magistrate's "brief question about what the government could show was not sufficient to overcome the repeated assertion to [Lee] that it would have been his burden to prove that the statute of limitations had expired, and not the other way around." (CV Doc. 2, p. 18)  Lee fails to state who made this "repeated assertion" to him.  Assuming he attributes that assertion to counsel, Lee neither presents evidence nor cites any portion of the record to substantiate his allegation.

- 11 -

to establish with record evidence that counsel erroneously advised him about the viability of the defense.

Even assuming that counsel performed deficiently by misadvising Lee about the viability of a statute of limitation defense, Lee fails to show that, absent the advice, he would have foregone his plea and proceeded to trial. Lee's contention to the contrary lacks merit. *See Hill v. Lockhart*, 474 U.S. 52 (1985) (holding that conclusory allegations of ineffective assistance of counsel are insufficient to raise a constitutional issue); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (holding that vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim). Lee's failure to establish prejudice precludes relief on this ground of ineffective assistance of counsel because the requirements of *Strickland* remain unsatisfied. *See Strickland v. Washington*, 466 U.S. at 691-92. Because Lee cannot demonstrate ineffective assistance of counsel, he cannot sustain his claim that the ineffective assistance rendered his plea unknowing or involuntary.[11]

To the extent that Lee otherwise challenges the validity of his guilty plea, he cannot prevail.

---

[11] Lee in his supporting memorandum claims that counsel provided "prejudicial" advice by telling Lee that "Judge Pizzo was her godbrother and that per his intervention [Lee] would not receive a sentence in excess of 168 months." (CV Doc. 2, p. 19) Counsel in her affidavit responds that "[a]t no time did [she] ever suggest that Magistrate Pizzo would do anything other than take the plea and recommend that it be accepted by the District Judge" and that "[a]t no time did [she] tell Mr. Lee that he would receive any sentence other than a life sentence, however, [she] did estimate a USSG calculation which [she] advised could be argued for if [Lee] received a 5K1.1 motion and/or a Rule 35 motion based on substantial assistance." (CV Doc. 7, p. 3, ¶¶17, 18) Lee presents no evidence to support this incredible allegation.

## B. VALIDITY OF GUILTY PLEA

"For a guilty plea to be entered knowingly and intelligently, 'the defendant must have not only the mental competence to understand and appreciate the nature and consequences of his plea but he also must be reasonably informed of the nature of the charges against him, the factual basis underlying those charges, and the legal options and alternatives that are available.'" *Finch v. Vaughan*, 67 F.3d 909, 914 (11th Cir. 1995) (quoting *Stano v. Dugger*, 921 F.2d 1125, 1142 (11th Cir. 1991)). *See also United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005) ("A court accepting a guilty plea must comply with Rule 11 and specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea."). "[T]he representations of the defendant [at a Rule 11 plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Such representations are presumptively trustworthy and considered conclusive absent compelling evidence to the contrary.

Lee initially appeared before the magistrate judge on January 10, 2007, to enter his guilty plea. During the plea colloquy Lee asked the court for additional

time to consult with counsel.[12]  The change of plea hearing resumed two days later

---

[12] During the January 10, 2007, change of plea hearing Lee repeatedly consulted with counsel. The magistrate judge reviewed portions of Lee's plea agreement with him and asked Lee if he needed additional time to consider his plea:

| | |
|---|---|
| Court: | Are you ready to proceed? |
| [Lee]: | Yes, sir. |
| Court: | Do you need additional time to speak with your lawyer? |
| [Lee]: | I would like additional time, sir, but - - |
| Court: | I'm sorry? |
| [Lee]: | I would like additional time. |

. . . .

Court:  Let me tell you, Mr. Lee, the decision that you have to make is not a particularly envious decision that anyone would want to make. Your choices are tough. And you have a very experienced and knowledgeable counsel representing you. The decision is yours to make.

You have three options, at least that's what I used to say when I was in [counsel]'s shoes. I'm sure she's essentially saying the same thing. You can take the plea agreement, you can go to trial, or you can do nothing, put your head in the sand and bury it, in which case somebody will decide for you, namely, that is, you'll go to trial.

For better or for worse, Congress has decided to give the keys to the prosecutor as to drug cases involving minimum mandatory penalties. And that is that only the prosecutor can decide whether the sentence will be below that, potentially.

In other words, they can ask the court to reduce the sentence below the minimum mandatory penalty. That doesn't mean the court can't on its own decide, well, I don't think this is a fair sentence, without such a recommendation.

So you are in a very hard place. And because you face a mandatory life sentence, that is an even harder decision to make. And I'm sure you know that a life - - a life sentence means just that, a life sentence. There is no parole, there is no gain time, you're serving the remainder of your life in a federal institution.

(continued...)

on January 12, 2007.  During the plea colloquy the magistrate judge advised Lee of the nature and elements of the charged offense, the factual basis for the plea, the terms of the plea agreement, the rights he forfeited by pleading guilty, and the possible sentence he faced.  (CR Doc. 46, pp. 5-18)  Lee averred under oath that he both understood each of these provisions and that he was satisfied with counsel's representation.  Lee admitted that he was, in fact, guilty of the charged offense and that it was his decision to enter his plea.  The plea colloquy also shows that, after extensive discussion with counsel, Lee chose to forego a statute of limitation defense. (CR Doc. 46, pp. 18-22)

Aside from his own self-serving allegation, Lee produces no evidence to substantiate his claim that he involuntarily entered his guilty plea.  Lee signed the written plea agreement in which he admitted that he entered his plea freely and voluntarily without threat or coercion.[13]  Although afforded the opportunity, Lee

---

[12](...continued)
> So the stakes are high.  And that's why I have waited and given you 15 minutes or so talking to your lawyer so that you could make an intelligent decision, a decision that you're comfortable with.
>
> And I'm prepared to continue this and give you some more time to do that. But just, also, so that you know, you're not going to have an indefinite time to make such a decision.  Your case will remain on the trial docket.  And sooner or later, you will have to make a decision about which - - how you wish to proceed.

(CR Doc. 52, pp. 9-11)

[13] The plea agreement states:

The defendant acknowledges that defendant is entering into this agreement and is

(continued...)

- 15 -

during the plea colloquy expressed neither a misunderstanding of the statute of limitation defense nor dissatisfaction with counsel's representation. Lee's sworn statements at the plea colloquy, as well as his signature on the plea form, demonstrate the knowing and voluntary nature of his plea. Lee presents no evidence establishing either that he did not want to proceed with his plea or that counsel coerced him into entering his plea. Lee's unsubstantiated allegations fail to overcome the strong presumption of verity afforded his sworn statements made during the plea colloquy. *Blackledge v. Allison*, 431 U.S. at 73-74. Lee fails to establish that he involuntarily entered his plea.

---

[13](...continued)
pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

(CR Doc. 12, pp. 12-13)

Accordingly, the motion to vacate under 28 U.S.C. § 2255 (CV Doc. 1) is **DENIED**. The clerk shall enter a judgment against Lee and close this case.

**CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

It is further ordered that Lee is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id*. "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id*. at § 2253(c)(2). To make such a showing, Lee "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Lee has not made the requisite showing in these circumstances. Finally, because Lee is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED in Tampa, Florida, on March 2, 2012.

*Steven D. Merryday*
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE